# FILED

**AFFIDAVIT**

**Republic of Italy**
**Province of**
**City of**
**Embassy of the United States of America**

Republic of Italy
Province of Florence
City of Florence
Consulate General of the
United States of America

}SS

Before me, **FRANCESCA MASI, NOTARIZING OFFICER** ~~(Vice) Consul of~~
the United States of America at, **FLORENCE** duly commissioned and qualified, personally
appeared **RICCARDO GOTTER**.

who, being duly sworn, says as follows:

1) My name is **RICCARDO GOTTER** and

I reside at **TRENTO (ITALY) - CORSO TRE NOVEMBRE, 112**

2) I was born at **TRENTO (ITALY)** on **NOVEMBER 26, 1964**

3) As Beneficial owner of 1,113,950 At Home Corporation common stocks class A cusip 045919107, I underwriter GOTTER RICCARDO, - other to declare that I haven't received until now any cash and values and/or securities as recovery from the beginning of At Home Corporation Chapter 11 and Chapter 7 procedures case n.01-32495 – do the following demands:

a) for first thing I demand if I'm a register claimant in equity class 7 – pursuant the sentence of Judge Thomas E. Carlson dated May 2, 2008 (attached A) and after the email of my attorney Stephen Corvin Becker (attached B) which declared to me in August 2010 that I'm an allowed claimant shareholder of At Home Corporation – and then I'd like to know for how many shares I'm considered as an allowed claimant equity holder;

b) to have from At Home Bondholders' Liquidating Trust a balance sheet and a statement showing the cash flow and values and recoveries (example: $400 ml settlement agreement with AT&T, $80 ml settlement agreement with Comcast and Cox, $18 ml received from GUCLT, settlement agreement with Google Inc, etc.) arising from his activity – as the kind of statement issued by At Home General Unsecured Creditors' Liquidating Trust GUCLT for his activity, like exposed in the attached C - considering that the same Trust (BHLT) now is managing all the assets and activities of defunt At Home Corporation also on behalf of and in favour of equity security holders (see attached D);

c) to terminate I declare that every substitution of my person in all the declarations, statements, settlements, agreements, etc. about this matters is illegal and there is no reason because I appoint and charge another person to substitute me, and therefore I do my declarations and my statements in person by u.s. embassy/consulate and then sent as original/copy both by post and both by email.

**And further affiant saith not**

(Signature of Affiant)

Subscribed and sworn to before me this **30th** day of **July 2019**

(Vice) Consul of the United States of America

Francesca Masi
Notarizing Officer

002.DOC/10/09

To: Clerk of the Court
U.S. Bankruptcy Court Northern
District of California
P.O. Box 7341
San Francisco, CA 94120-7341
235 Pine Street, 19th Floor
San Francisco, CA 94104

Cc: At Home Corporation
c/o Omni Management Group
16501 Ventura Blvd.
Suite 440
Encino, CA 91436-2068

Cc: At Home Corporation
900 East Hamilton Avenue
Suite 100
Campbell, CA 95008

Cc: **Co-Counsel to Bondholders**
**Liquidating Trust**
Maxim B. Litvak (CA Bar No. 215852)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111

Cc: **Co-Counsel to Bondholders**
**Liquidating Trust**
Richard W. Slack
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119

Cc: **Counsel for Official Committee of**
**Equity Security Holders**
Stephen C. Becker, Esq.
Becker Law Office
Robert Dollar Building
311 California Street, Suite 330
San Francisco, CA 94104-2625

Signature: _Riccardo Gotter_

Print Name: RICCARDO GOTTER

Date: 3 0 LUG 2019

1







REPUBBLICA ITALIANA

PASSAPORTO / PASSPORT / PASSEPORT

Tipo, Type, Type, Codice Paese / Issuing State Code du Pays émetteur, Passaporto N. Passport No. Passeport N°

P          ITA          YB1492899

Cognome, Surname, Nom (1)
GOTTER

Nome, Given Names, Prénoms (2)
RICCARDO

Cittadinanza, Nationality, Nationalité (3)
ITALIANA

Data di nascita, Date of birth, Date de naissance (4)
26 NOV/NOV 1964

Sesso, Sex, Sexe (5)     Luogo di nascita, Place of birth, Lieu de naissance (6)
M                          TRENTO (TN)

Data di rilascio, Date of issue, Date de délivrance (7)
27 LUG/JUL 2017

Data di scadenza, Date of expiry, Date d'expiration (8)
26 LUG/JUL 2027

Autorità, Authority, Autorité (9)
MINISTRO AFFARI ESTERI
E COOPERAZIONE INTERNAZIONALE
Firma del titolare, Holder's signature / Signature du titulaire (10)

P<ITAGOTTER<<RICCARDO<<<<<<<<<<<<<<<<<<<<<
YB149289911ITA6411264M2707266<<<<<<<<<<<<02

RESIDENZA / RESIDENCE / DOMICILE (11)
TRENTO (TN)

STATURA / HEIGHT / TAILLE (12)
179

COLORE DEGLI OCCHI / COLOUR OF EYES / COULEUR DES YEUX (13)
VERDI

Case: 01-32495     Doc# 5345     Filed: 08/08/19     Entered: 08/20/19 13:22:51     Page 3 of 34



Signed and Filed: May 02, 2008

THOMAS E. CARLSON
U.S. Bankruptcy Judge

1  SUZZANNE UHLAND (S.B. 136852)
   KAREN RINEHART (S.B. 185996)
2  JENNIFER TAYLOR (S.B. 241191)
   O'MELVENY & MYERS LLP
3  400 South Hope Street
   Los Angeles, CA 90071-2899
4  Telephone: (213) 430-6000
   Facsimile: (213) 430-6407
5
   Attorneys for the At Home Liquidating ~~Trust, successor~~
6  in interest to At Home Corporation, et al., Debtors and
   Debtors in Possession
7

8

9

10             UNITED STATES BANKRUPTCY COURT FOR

11             THE NORTHERN DISTRICT OF CALIFORNIA

12                      San Francisco Division

13  In re                              Case No. 01-32495-TC

14  AT HOME CORPORATION,               Chapter 11
    a Delaware corporation, et al.,
15                                     ORDER GRANTING (1) OBJECTION TO
              Debtors.                 CLAIM OF RICCARDO GOTTER AND (2)
16                                     MOTION FOR ORDER DISALLOWING
                                       CLAIM OF RICCARDO GOTTER
17

18                                     (Jointly Administered)

19                                     Hearing Held:
                                       Date:    April 25, 2008
20                                     Time:    9:30 a.m.
                                       Court:   Courtroom 23
21                                              The Hon. Thomas E. Carlson

22

23

24

25

26

O'MELVENY & MYERS LLP
ATTORNEYS AT LAW
LOS ANGELES

Upon the (1) Objection to Claim of Riccardo Gotter, (2) Motion For Order
Disallowing and Expunging the Claim (the "Motion")[1] filed by the At Home Liquidating
Trust ("AHLT"), successor in interest to At Home Corporation ("At Home") and certain
of its affiliated entities (together with At Home, the "Debtors"), as debtors and debtors in
possession in the above-captioned chapter 11 cases (the "Cases"), with this Court on
March 10, 2008 seeking entry of an order disallowing the Claim of Riccardo Gotter,
designated by the official claims and noticing agent in the Cases as Claim Number 1429,
as amended by, inter alia, supplemental correspondence including letters filed on February
27, 2008 [Docket No. 4857] and February 29, 2008 [Docket No. 4858] (the "Claim"),
filed against the Debtors, as provided in the Objection, (3) Declaration and Opposition of
Gotter Riccardo in Response to Objection by the At Home Liquidating Trust to
Allowance of his Interest Claim and the declarations filed in support thereof, (4) the
AHLT's Reply to Opposition of Riccardo Gotter to Objection to Claim and the
declarations filed in support thereof and (5) The At Home General Unsecured Creditors'
Liquidating Trust's Joinder to the At Home Liquidating Trust's Motion and Objection to
Claim of Riccardo Gotter:

NOW, THEREFORE, based upon all of the evidence proffered or adduced;
the memoranda and objections, if any, filed in connection with the Objection and
appearances as noted in the record; and the Court having determined that the relief
requested in the Objection is in the best interests of the Debtors, their estates, their
creditors and other parties in interest; and upon the entire record of these cases; and after
due deliberation thereon; and good cause appearing therefor:

**IT IS HEREBY FOUND, CONCLUDED AND DECLARED:**[2]

A.       The Court has jurisdiction over this matter and over the property of
the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and

---

[1] Terms not defined herein are defined in the Objection.
[2] Pursuant to Federal Rule of Bankruptcy Procedure 7052, findings of fact shall be
construed as conclusions of law and conclusions of law shall be construed as findings of
fact as appropriate.

O'MELVENY & MYERS LLP
ATTORNEYS AT LAW
LOS ANGELES

SF1:703932.3

1

1  1334;

2          B.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and

3  (K). Venue of these chapter 11 cases and the Objection in this district is proper under 28

4  U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are

5  Sections 102(1), 105(a), 501 and 502(b) of the Bankruptcy Code and Rules 3003 and 3007

6  of the Federal Rules of Bankruptcy Procedure.

7          C.     Good and sufficient notice of the Objection has been given, in

8  accordance with Bankruptcy Local Rule 9014-1 of the United States Bankruptcy Court for

9  the Northern District of California, and notice is in compliance with the Federal Rules of

10  Bankruptcy Procedure and the local rules of procedure of this Court. Such parties in

11  interest have been afforded a reasonable opportunity to object to or to be heard regarding

12  the relief requested in the Objection, and no other or further notice is necessary to grant

13  the relief herein.

14      **IT IS HEREBY ORDERED:**

15          1.     The Objection is GRANTED with respect to the Claim described in

16  the Motion.

17          2.     The Claim is disallowed with prejudice.

18          3.     Claimant Riccardo Gotter shall be construed as having asserted a

19  Proof of Interest.

20          4.     The Court will suspend all proceedings with respect to the validity or

21  amount of such Proof of Interest unless and until such time that there are sufficient funds

22  (the "Class 7 Surplus") in the Cases to permit a distribution to Class 7 (Stock Interests,

23  Option Interests, Warrant Interests and Interest Related Claims) pursuant to the Debtors'

24  Joint Chapter 11 Plan of Liquidation Dated as of May 1, 2002 (June 18, 2002

25  Modification) approved by the Bankruptcy Court on August 15, 2002 and effective on

26  September 30, 2002.

27          5.     Pending the establishment of any such Class 7 Surplus, all motions

for approval of a compromise or settlement pursuant to Federal Rule of Bankruptcy

O'MELVENY & MYERS LLP
ATTORNEYS AT LAW
LOS ANGELES

SF1:703932.3

2

Case 01-32495   Doc# 4898   Filed: 05/02/08   Entered: 05/02/08 15:21:38   Page 3 of
Case 01-32495   Doc# 5848   Filed: 08/20/19   Entered: 08/20/19 13:22:51   Page 6 of 34

1  Procedure 9019, and all motions pertaining to the disposition of the AHLT's remaining
2  assets shall be served upon Stephen C. Becker, Esq., on behalf of the Official Committee
3  of Equity Security Holders.

4      6.    Nothing in the notice of the Objection, the Objection, or the
5  accompanying exhibits constitutes a waiver of the rights of the Debtors and their
6  successors in interest to assert any claims, counterclaims, rights of offset or recoupment,
7  preference actions, fraudulent-transfer actions, or any other bankruptcy or nonbankruptcy
8  claims against the claimants whose claims are the subject of the Objection.

9      7.    The AHLT is authorized to direct Omni Management Group, LLC,
10 the official claims agent in the Debtors' cases, to amend the Official Claims Register
11 consistent with this Order.

12

13 Approved as to form:

14

15

16 May 1, 2008                           /s/ Karen Rinehart
   Date                                  Karen Rinehart
17                                        Jennifer Taylor
18                                        O'MELVENY & MYERS LLP
                                          Counsel for the At Home
19                                        Liquidating Trust

20

21 May 1, 2008                           /s/ Rebecca U. Litteneker
   Date                                  Rebecca U. Litteneker
22                                        McNUTT LAW GROUP LLP
23                                        Counsel for the Official Committee of
24                                        General Unsecured Creditors

25

26                    *END OF ORDER*

27

SF1:703932.3
3

Case: 01-32495    Doc# 4898    Filed: 05/02/08    Entered: 05/02/08 15:21:38    Page 4 of
5
Case: 01-32495    Doc# 5345    Filed: 08/08/19    Entered: 08/20/19 13:22:51    Page 7 of
34

O'MELVENY & MYERS LLP
ATTORNEYS AT LAW
LOS ANGELES

A)

COURT SERVICE LIST

1

2   Karen Rinehart
3   Jennifer Taylor
    O'Melveny & Myers LLP
4   400 South Hope Street
5   Los Angeles, California  90071-2899

6   Stephen Becker
    Becker Law Office
7   Robert Dollar Building
8   311 California Street, Suite 330
    San Francisco, California  94104-2625
9
    Rebecca Litteneker
10  McNutt Law Group LLP
11  188 The Embarcadero, Suite 800
    San Francisco, California  94105
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

O'MELVENY & MYERS LLP
ATTORNEYS AT LAW
LOS ANGELES


ℬ)

stephen C. Becker <scbecker@beckersfo.com>,
"'Riccardo Gotter'" <ricgot1@libero.it>, "Riccardo Gotter"
"'Riccardo Gotter'" <riccardo.gotter@poste.it>, "Riccardo Gotter" <riccardo.gotter@poste.it>
<riccardo.gotter@certemail.it>, "Riccardo Gotter"

Data giovedì 12 agosto 2010 - 00:45

## PRIVILEGED ATTORNEY-CLIENT COMMUNICATION re At Home Corporation (7454-001)

Dear Sig. Gotter: This will respond to your message of August 10th.

I have advised you repeatedly, and you continue to ignore, that your claim as a shareholder of the common stock of At Home Corporation has been allowed by order of the bankruptcy court and furthermore that, pursuant to the terms of the court-confirmed plan of reorganization for At Home Corporation, you are entitled to a pro rata distribution of whatever assets remain after all creditors and equity security holders with rights senior to yours have been paid in full, which may include interest as well as principal. I have further advised you that it does not appear as though there are now, nor will there ever be, sufficient cash or cash-equivalent assets to allow any distribution to be made to shareholders. For some reason, you either ignore or refuse to accept these facts.

I advised you of these facts over two years ago, yet you persist in asking me to do the impossible. There does not appear to be anything further that I can do for you, and; in addition, when you ask me to oppose the pending motion to close the administration of the bankruptcy case, you ask me to adopt a position that is not well-founded in either the law or the facts. An attorney is not permitted to take such a course of action, and, for that reason, I am unable to prepare the opposition that you request. If you believe that other counsel might be able or willing to do so, then you should retain other counsel for that purpose. Frankly, I do not believe that any reputable and ethical attorney would, after review of the facts, be willing to do as you ask.

In order that there be no misunderstanding, I must make another comment. Our firm was retained by the Official Committee of Equity Security Holders, of which class you are a member, for one purpose and one purpose only, and that was to oppose the bondholders' committee's motion for approval of a compromise of claims that the bankruptcy estate asserted against Cox and Comcast, which compromise the bondholders' committee had negotiated with Cox and Comcast. As you will recall, the equity security holders' committee fought long and hard to oppose the negotiated compromise, but the court ruled against the equity security holders' position. Later, when we represented you, the court allowed your interest as a shareholder. That is all the relief that you could ever hope to obtain. There is one other point that I must bring to your attention. You have repeatedly sent copies to Patricia Cutler, who is one of the attorneys for the United States Trustee, of messages that you addressed to me. I have admonished you more than once not to do so because this jeopardizes, and in fact may have waived, the privileged status of any communications that I direct to you. I cannot, and will not, accept a situation when you persist in disclosing to third persons communications with me that must remain confidential.

I deeply regret that I am not able to do what you ask. Given the fact that you seem to ignore completely everything that I say to you, there is nothing further that I am able to do for you. I wish you the best of luck in what I am certain you believe is a meritorious quest for justice. Regards, SCB

Stephen C. Becker
<scbecker@beckersfo.com>
Becker Law Office
Mailing Address: P. O. Box 192991, San Francisco, California 94119-2991
(415) 434-8000 & (408) 264-3109
(415) 434-4618 & (408) 264-3172 (direct)
(415) 362-7411 & (408) 264-3791 (facsimile)
(415) 559-9814 (mobile)

This message, together with any attachment, is intended only for the use of the person or entity to which it is addressed and may contain information that is legally privileged, confidential, or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the sender by return e-mail and delete this message, together with any attachment, from your computer. Thank you.

From: Riccardo Gotter
Sent: Tuesday, August 10, 2010 5:27 AM
To: scbecker@beckersfo.com

nce: High

d morning doctor lawyer Stephen Corvin Becker,

I'm writing you to say that for my opinion it's time to obtain the allowance of my interest claim to the Bankruptcy Court of San Francisco before the approvation of the decree of closing of the bankruptcy case 32495; and therefore, as lawyer of Class 7 equity security holders for the former At Home Corporation shareholders, I demand to you to do an opposition to the proposal decree of closing case proposed from At Home Liquidating Trust. I'm going to explaining the reasons.

At the moment, after my analysis, all the creditors would result paid and the intellectual properties that remain after the payment of Unsecured Creditors (the last class that must be paid after the Bondholders and before the equity holders) can be utilized for the satisfaction of the interest claims of the Class 7 equity holders.

To participate to the final liquidation my interest claim must be allowed (at least as allowed owner and legal holder of 1,113,950 At Home Corp' shares) because after the closing case all the remaining assets will be transferred to the "At Home Bondholders Liquidating Trust" which (as approved in December 2009) will became the only entity to represent and to manage the "At Home Estate" and will function (like established also in August 2002) as Debtor in Possession for the satisfaction and the settlement of Class 5, Class 6 and Class 7 claims. Therefore for my settlement I need now to have a quote (an allowed interest claim) to participate then to the final liquidation.

About the question of the total payment of creditors and the residual assets to divide between the former At Home Corp equity security holders now I'm exposing information more detailed and it's possible to do the following basis consideration.

In September 2002 at the effective date of the liquidation plan the total assets were $ 435.240 million dollars and the total debts to pay were $ 991.461 million dollars of which $ 981.093 liabilities subject to compromise.

At the same date in September 2002 the "At Home Liquidating Trust" received $ 107.721 million dollars of cash and equivalents and short term investments to pay administrative, priority and secured claims. A part of the other assets - after the assignment of $ 107.721 million dollars to the "At Home Liquidating Trust" - for the amount of $ 115.986 million dollars (equal to 120/269 of residual cash and equivalents and short term investments) was assigned to the At Home Unsecured Creditor Liquidating Trust (as his report that I've attached here), and an other part (the 149/269 of residual cash and equivalents and short term investments) for the amount of $ 144.849 Million Dollars was given to the At Home Bondholders Liquidating Trust. Therefore, in this manner, an amount of about 66.684 million dollars remained as residual assets not distributed.

Therefore as the report of September 2002 (the last before the beginning of liquidation procedure, that I've attached too) the total assets were $ 435.240 million dollars and only $ 368.556 million dollars were distributed to the "At Home liquidating Trust" and to the "At Home Bondholders Liquidating Trust" and to the "At Home Unsecured Creditors Liquidating Trust": the residual assets not distributed would amount to about $ 66.684 million dollars (without the inclusion of the cash the At Home Liquidating Trust receives every quarterly as revenues from the remaining assets).

The At Home Unsecured Creditor Liquidating Trust has paid $ 114.652 million dollars (at the net of $ 60 million dollars of legal fees!) to the unsecured creditors, satisfying about 90% of the unsecured creditors claims of allowed amount of 119.438 million dollars, and in this way he has closed the payments that, for the liquidation plan, he had to do; and then the GUCLT made also a payment of a residual difference of about $ 18 million dollars to the "At Home Bondholders Liquidating Trust".

The "At Home Bondholders Liquidating Trust" received $ 144.849 million dollars at the beginning of the liquidation plan (as a part of cash and equivalents and short term investments), $ 400 million dollars in June 2005 from the settlement of law action against AT&T, $ 80 million dollars in December 2007 as settlement of the law action Comcast Corp and Cox Communications and further $ 18 million dollars as the above payment from the "At Home Unsecured Creditors Liquidating Trust": the total money received and recovered by the "At Home Bondholders Liquidating Trust" was of about $ 643 million dollars and therefore after a maximal valuation of Bonds and Convertible Notes of $ 748.372 million dollars (as stayed in the report of September 2001 when the Chapter 11 began) - but it's necessary to remember that also the bonds

e less then $ 747 million dollars - at the maximum $ 104 million dollars would remain to pay to Bondholders.

consideration of about $ 67 million dollars as residual assets and the difference between the amount of 24 million dollars ($ 116 + 108 million dollars) assigned to the "At Home Unsecured Creditors Liquidating Trust" and to the "At Home Liquidating Trust" and the amount paid until now from these two entities ($ 186 million dollars), then about further $ 38 million dollars would remain in cash that, with the addition of about $ 67 million dollars as residual assets (not at all distributed), would bring the total residual assets to $ 105 million dollars, that's enough to pay eventually the Bondholders and therefore all the creditors..

It's very important also to remember that in all the stayed consolidated balance sheets there aren't never the interests in Excite Japan join venture and Excite UK joint venture, which - as declared in several reports - are always excluded from the consolidated balance sheets because it's not possible to exercise their controlling vote. These interests - together some other interests in portfolio received from the sale of some business unit assets (from November 2001 until April 2002) - and their periodic royalties would be a further residual value in the total assets that aren't included in the consolidated reports, and which must be distributed to the equity security holders.

To finish my analysis it's necessary to consider that the assets of intellectual properties and the interests are valued in all the reports (after the beginning of Chapter 11 procedure and before the beginning of liquidation plan) at a minimum price - other the exclusion of Excite Japan and Excite UK joint ventures - and however without the legal activity of the At Home Unsecured Creditors Liquidating Trust and of the At Home Liquidating Trust (and after their closing by the Bondholders Liquidating Trust) to pursue the "intellectual property" rights and to maximize the value of the assets in portfolio, and which actions are confirmed also in the resolution of the assets transfer from AHLT and from GUCLT to the Bondholder Liquidating Trust (see docket entry n. 5155 e 5156 of Bankruptcy case 32495).

I'm going to attend, for the above reasons, some law action by your law firm as attorney of Class 7 equity holders and also my lawyer in the Bankruptcy case 32495 at the Court of San Francisco.

An other thing that I demand to you is to have the reports of the legal activity with the relative transactions and the consolidated financial statements of the total management both of the "At Home Liquidating Trust" and of the "At Home Unsecured Creditor Liquidating Trust" (before their closing) and of the "At Home Bondholders Liquidating Trust", that's my right because all the three entities do the function of Debtor in Possession (obviously for their part of competence), also for the former At Home Corp' shareholders, during the liquidation of At Home Estate, as established in the relative liquidation plan.

Thank you very much.
Sincerely.


Trento (Italy), 10th August 2010


Riccardo Gotter


My addresses:
Gotter Riccardo
38100 - TRENTO (ITALY), via Madonna della Corona n.1/a
38100 - TRENTO (ITALY), corso 3 Novembre n.112
Telephone: +(39)0461-916241  e  +£39)0461-811269
Mobile Phone: +(39)348-3303683
e-mail:  riccardo.gotter@poste.it  and  riccardo.gotter@certemail.it  and  ricgot1@libero.it

---

**Allegato(i)**

smime.p7s (5 Kb)

1  McNUTT LAW GROUP LLP
   SCOTT H. McNUTT (CSBN 104696)
2  188 The Embarcadero, Suite 800
   San Francisco, California 94105
3  Telephone: (415) 995-8475
   Facsimile: (415) 995-8487
4
   Attorneys for Hank M. Spacone,
5  Trustee of the At Home General
   Unsecured Creditors Liquidating Trust
6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11 In re                              Case No. 01-32495-TC

12 AT HOME CORPORATION,               Chapter 11

13            Debtor.                 **TRADE TRUSTEE'S MOTION FOR
                                      ORDER APPROVING TRUST CLOSING**

14                                    Hearing
                                     ‾‾‾‾‾‾‾
15                                    Date:      July 27, 2009
                                     Time:      9:30 a.m.
16                                    Location:  U.S. Bankruptcy Court
                                                Courtroom 23
17                                                235 Pine Street
                                                San Francisco, California
18                                    Judge:     Hon. Thomas E. Carlson

19

20 I.   **Introduction**

21        The Trade Trust has distributed 90 cents on the dollar to its constituency and would now

22 like to close. In the Trade Trustee's business judgment, there remain no further assets justifying

23 administration, other than the distribution from the At Home Liquidating Trust (the "AHLT") to

24 which the Trade Trust is entitled. The Trade Trustee sees no impediment to an immediate

25 distribution from the AHLT of the Trade Trust's pro rata share of AHLT assets. In the Trade

26 Trustee's business judgment, once the AHLT distribution is received the Trade Trustee can

27 determine whether a final distribution is warranted and, if so, start the administrative process of

28 making that distribution. The Trade Trustee has satisfied all requirements of the Trust Agreement

1 creating the Trade Trust, including all financial reporting requirements. The Trade Trustee wants

2 to close as soon as practicable and preferably before year end, so as to avoid additional

3 unnecessary expenses associated with remaining open in 2010.

4 **II.** **Jurisdiction**

5       Jurisdiction of this Motion is proper under 28 U.S.C. § 1334 and this Court's ORDER

6 PURSUANT TO 11 U.S.C. § 1129 CONFIRMING THE DEBTORS' JOINT CHAPTER 11 PLAN OF

7 LIQUIDATION DATED AS OF MAY 1, 2002 (AS MODIFIED JUNE 18, 2002) ("Confirmation Order" and

8 the "Plan", as circumstances warrant), which Plan incorporates by reference a certain settlement

9 agreement (the "Settlement Agreement") that is the basis of the Plan. The Plan provides that this

10 Court retain exclusive jurisdiction over administration of this bankruptcy proceeding. *See,* Plan

11 Art. 12(A).

12 **III.** **Supervisory Board**

13       The Supervisory Board was a key component of the unsecured creditors' committee

14 objective that the administration of the Trade Trust would be run on a business model, including

15 timetables and objectives. The Supervisory Board includes representatives from two of the three

16 largest unsecured creditors. The Supervisory Board has retained the same membership over the

17 seven years of Trade Trust administration. The Supervisory Board meets regularly and works

18 closely with the Trade Trustee and worked closely with his predecessor. All significant Trade

19 Trustee initiatives, including this motion, implement Board resolutions made in the reasonable

20 exercise of the Board's business judgment.

21 **IV.** **Factual Background**

22       The Court is familiar with the background of this case. Specific factual issues are set forth

23 below as needed. Filed together with this Motion is the DECLARATION OF HANK M. SPACONE IN

24 SUPPORT OF TRADE TRUSTEE'S MOTION FOR ORDER APPROVING TRUST CLOSING ("Spacone

25 Decl."). Attached to the Spacone Decl. are (i) the At Home General Unsecured Creditor

26 Liquidating Trust Agreement ("Trust Agreement"), (ii) the Reviewed Financial Statements as

27 required under the Trust Agreement and distributed to all creditors for Calendar Years 2002, 2003,

28 2004, 2005, 2006, 2007 & 2008, and (iii) a sources-and-uses of cash report prepared by the Trade

TRADE TRUSTEE'S MOTION
FOR ORDER APPROVING TRUST CLOSING

Case: 01-32495   Doc# 5345   Filed: 08/08/19   Entered: 08/20/19 13:22:51   Page 13 of 34

1  Trustee.  The Trade Trustee respectfully submits that these documents factually support the relief

2  requested in this Motion.

3  **V.  <u>The Trade Trust Should Wind Down, Close & Terminate As Provided For In the</u>**

4  **<u>Trust Agreement</u>**

5  [The Trustee shall] "not unduly prolong the duration of the liquidating trust. . . .  The

6  Liquidating Trustee shall exercise reasonable business judgment in liquidating the Trust

7  Assets. . . .  Except as expressly set forth [in the Trust Agreement] or as determined by the

8  Supervisory Board, the Liquidating Trustee shall have the right to pursue or not to pursue any and

9  all claims, rights or Rights of Action, as he determines in good faith are in the best interests of the

10  Liquidating Trust Interests and consistent with the purposes of the Liquidating Trust." *See,* Trust

11  Agreement at Para. 4.2.  The Trade Trustee's decisions are protected by exculpation and

12  indemnification provisions only limited to the extent the Trade Trustee commits willful

13  misconduct, gross negligence or fraud.  *See,* Trust Agreement at Para. 4.3.

14  The Trade Trustee has exercised his reasonable business judgment and determined that the

15  Trade Trust should be closed and terminated.  The Trust Agreement provides that the Trade Trust

16  terminates upon the earlier of "the liquidation, administration and distribution of the Trust Assets

17  in accordance with the terms of this Trust Agreement and the Plan, and the full performance of all

18  other duties and functions set forth herein or in the Plan" or the end of the Trust's term, as

19  extended.  Although the Trade Trustee has previously obtained an order from this Court extending

20  the Trade Trust's term through 2010, the full reach of that extension may no longer be necessary.

21  That extension was sought when the Trade Trustee anticipated administering the IP Assets;

22  subsequent appellate decisions, discussed further below, have led the Trade Trustee and the Board

23  to conclude that the IP Assets should not be administered.

24  If the Trade Trust were to receive its share of the AHLT assets tomorrow, the process of

25  completing the "liquidation, administration and distribution," would nonetheless take several

26  months.  The AHLT funds will complete "liquidation," and the Trade Trustee has determined that

27  any further "administration" of assets is unlikely to justify further cost.  However, if the Trade

28  Trustee, in his discretion, determines that a final distribution is appropriate, the process of making

1   that distribution will take most of the rest of the year.

2       Once the distribution is complete, closure and termination take additional time.  Reviewed

3   financial statements must be obtained and final tax returns must be prepared and filed.  The Trade

4   Trustee would like to have all these tasks done by year end so that the substantial administrative

5   cost of operating in 2010 can be avoided.

6   **VI.**    **The AHLT Must Pay the Trade Trust Its Money**

7       The Trade Trust's interest in the AHLT is the Trade Trust's most significant remaining

8   asset.  Under the Plan, the AHLT holds 45% of its assets for the benefit of the Trade Trust.  The

9   AHLT is a fiduciary to the Trade Trust.  By this Motion, the Trade Trust asks the AHLT to cease

10   any activity on behalf of the Trade Trust and to promptly distribute to the Trade Trust its share of

11   the AHLT's assets.

12   **VII.**   **The Trade Trustee Declines to Further Administer the IP Assets**

13       The Trade Trust previously asked this Court to extend the term of its trust to enable it to

14   administer certain intellectual property assets ("IP Assets") that had been divided between the

15   Trade Trust, the Bondholder Liquidating Trust ("BHLT") and the AHLT.  Thereafter, two Federal

16   Appellate Court decisions were rendered which suggest that the Trade Trust cannot realize value

17   from the IP Assets.  Those two rulings, *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir.

18   2007) and *Spacone v. Williamson*, 2007 U.S. App. LEXIS 28435 (9th Cir. Dec. 6, 2007), have

19   effectively foreclosed the Trade Trust's ability to enforce any part of At Home's IP rights.

20       The Trade Trustee believes further effort to realize value from IP Assets is not warranted.

21   Previously, when the Trade Trustee sought to close the Trade Trust, the Court and BHLT were not

22   supportive, in large measure because they thought the Trade Trust should attempt to realize value

23   from the IP Assets.  The Trade Trust attempted to do so, and the result has been exclusively

24   negative. The Trade Trustee and the Board are of the opinion that further effort will simply

25   increase the Trade Trust's cost of administration with little likelihood of recovery.

26       The Trade Trustee's decision is based on experience and sound business judgment.  During

27   the long course of the Trade Trust's administration, the greatest economic failure has been the

28   inability to realize any value from the IP Assets. The Trade Trustee's efforts to realize value from

1 the IP Assets have consumed the largest amount of legal fees and costs devoted to any of the

2 Trade Trust's efforts, have caused the Trade Trust to remain open for three years longer than

3 necessary, and have imposed a huge administrative cost on the Trade Trust. Upon his

4 appointment as successor trustee, Mr. Spacone negotiated the conversion of some legal services

5 related to IP matters from fee-based to contingency-based compensation, transferring to his law

6 firms a significant portion of the loss. While this effort to mitigate the loss was constructive,

7 ceasing the effort to realize value from the IP Assets would have been – and is now – a much

8 better approach.

9 **VIII. <u>The Trade Trustee Has Fully And Completely Satisfied The Financial Reporting</u>**

10 **<u>Requirements Under The Trust Agreement</u>**

11 The Trust Agreement requires the Trade Trustee deliver extensive annual financial

12 reporting. Trust Agreement, Para. 3.8(g). Since inception, the Trade Trustee has annually

13 engaged an independent accounting firm to produce reviewed financial statements. These are

14 annually distributed to nearly 850 creditors. Grant Thornton LLP has provided reviewed financial

15 statements for Calendar Years 2002, 2003, 2004, 2005, 2006, 2007 & 2008. *See,* Spacone Decl.

16 Exhibit B. In order to provide the Court useful data in a familiar form, the Trade Trustee has also

17 prepared a sources-and-uses accounting along the lines of a Trustee's Final Account. *See,*

18 Spacone Decl., Exhibit C. The following narrative is based on these two documents.

19 Before and after confirmation, the Supervisory Board created by the Trade Trust

20 documents worked with counsel to identify appropriate candidates to serve as trustee. An

21 ambitious and aggressive program to administer the Trade Trust's assets and liabilities required an

22 experienced and motivated trustee. The Supervisory Board's objective was to disburse as much

23 money as possible to legitimate creditors in as short a time as possible. The Supervisory Board

24 was also acutely aware that the longer a legal process takes, the more it costs.

25 At confirmation, claims against the Trade Trust were about 4,000 in number and

26 $841,141,315 in amount. Three years later, claims were 1,000 in number and $119,438,715 in

27 amount. Through vigorous and effective efforts, the Trade Trustee and his professionals reduced

28

TRADE TRUSTEE'S MOTION
FOR ORDER APPROVING TRUST CLOSING

144080.1

Case: 01-32495    Doc# 5345    Filed: 08/08/19    Entered: 08/20/19 13:22:51    Page 16
of 34

claims 79% by number and 86% by amount, resulting in a substantially greater distribution on allowed claims.

In order to distribute money quickly, procedures were developed to match, reconcile and evaluate claims in order to allow, disallow or compromise as quickly as possible. Maintaining large reserves for disputed claims, as a practical matter, made significant distributions impossible. Invalid and overstated claims both delayed distributing money to creditors and pushed down the distribution percentage. Hence speed and accuracy were equally important.

The other means to increase distributions was to obtain additional funds through litigation and settlement to defray the cost of administration and to supply additional money to distribute.

Within six months of Plan confirmation, the Trade Trust was aggressively prosecuting dozens of adversary proceedings seeking affirmative recoveries, hundreds of preferences and many hundreds of claim objections. All these actions were resolved within three years.

The Trustee, accounting support, and principal legal support were incentivized to move the process as quickly as possible. In most cases, incentive payments were driven by two factors: how much money was distributed and how quickly that distribution was made.

Nine months after Plan confirmation, the Trade Trust made its first distribution, amounting to a 50% dividend on all allowed claims. Eight months later, a second distribution was made, bringing the percentage distribution to 80%. A third distribution was made a year later, bringing the total distributed to 90% within three years of Plan confirmation.

At confirmation, the estate was funded with about $119 million. These funds were ultimately augmented by about $75 million in additional funds recovered post-confirmation – in total about $194 million.

Costs of administration have totaled about $60 million, or 31% of total funds. The Trade Trust has distributed $133 million to creditors and the BHLT. (The Trade Trust's unremitting focus on consistent standards for claim evaluation and allowance produced an $18 million distribution to the BHLT.) Of the $60 million in total administrative costs, about $40 million were legal fees. About half of the legal fees were based upon contingency fees or other forms of incentive-based compensation. Similarly, of the $20 million in non-legal administrative fees,

6

144080.1

about half were incentive driven. The foregoing does not include over $2 million dollars in fees and expenses incurred by firms for matters where the incentive was not reached. These fees and expenses were absorbed by the firms involved. Of nearly one thousand matters addressed, all have been resolved. As noted, the exception is the IP Assets, and it is the Trade Trustee's and Board's business judgment that there should be no further efforts to realize value from them.

## IX.  Conclusion

The Trade Trustee respectfully asks this Court enter an order:

1) Requiring the AHLT promptly to pay to the Trade Trust the funds it holds for the Trade Trust's benefit;

2) Determining that the Trade Trust may promptly close as provided for in the Trust Agreement; and

3) Determining that the Board and the Trade Trustee have satisfied their duties under the Trust Agreement.

Dated: July 1, 2009                    McNUTT LAW GROUP LLP


By: /s/ Scott H. McNutt
                    Scott H. McNutt
Attorneys for Hank M. Spacone,
Trustee of the At Home General Unsecured Creditors
Liquidating Trust

**At Home General Unsecured Creditor's Liquidating Trust**
**Cash Flow Statement**
**As of March 31, 2009**

| Sources of Cash | | |
|---|---|---|
| Beginning Cash | $ | 118,778,976 |
| | | |
| Admin. Income | | |
| Investment Income | $ | 3,958,438 |
| Interest Income | $ | 335,359 |
| Other Income (1) | $ | 70,696,705 |
| Total Admin. Income | $ | 74,990,502 |
| | | |
| Admin Exp A/P | $ | 871,220 |
| | | |
| **Total Sources of Cash** | $ | 75,861,722 |
| | | |
| Total Cash | $ | 194,640,698 |

| Uses of Cash | | | As % of Total Cash |
|---|---|---|---|
| Admin. Expenses | | | |
| Bank Service Charges | $ | 2,519 | |
| Insurance | $ | 1,028,135 | |
| Patent Acquisition | $ | 10,000 | |
| Accounting/Trustee | $ | 4,502,237 | |
| Performance/Milestones | $ | 25,811,087 | |
| Professional Fees (2) | $ | 29,010,976 | |
| Travel & Entertainment | $ | 56,269 | |
| Sub Total Admin. Expenses | $ | 60,421,223 | 31.04% |
| | | | |
| Trade Claims Payments | | | |
| Bondholders | $ | 18,371,483 | |
| Settlements | $ | 6,543,139 | |
| Convenience Class Payout | $ | 419,897 | |
| Distribution - CCR 1st | $ | 56,740,046 | |
| Distribution - CCR 2nd | $ | 37,485,900 | |
| Distribution - CCR 3rd | $ | 13,453,538 | |
| Sub Total | $ | 133,014,003 | 68.34% |
| | | | |
| **Totals** | $ | 193,435,226 | |

| Net Use of Cash | $ | (117,573,504) |
|---|---|---|

| Beginning Cash | $ | 118,778,976 | |
|---|---|---|---|
| Net Activity thru 03/31 | $ | (117,573,504) | |
| **Total Cash on Hand** | $ | 1,205,472 | (3) |

| Accrued Liabilities (not in Q-Books) (4) | $ | (38,362) |
|---|---|---|
| Bondholder Reserve | $ | - |
| Insurance Deductible Reserve | $ | (250,000) |

**Net Cash (Accrual Basis)**     $     917,111

Note   (1)  See Other Income for detail

        (2)  See Professional Fees for detail

        (3)  Agrees to General Ledger - as of March 31, 2009

        (4)  See Accr_Unpaid Fees for detail

**At Home General Unsecured Creditor's Liquidating Trust**
**Cash Flow Statement**
**As of March 31, 2009**

## Sources of Cash

| | | |
|---|---|---:|
| Beginning Cash | $ | 118,778,976 |
| | | |
| Admin. Income | | |
| Investment Income | $ | 3,958,437 |
| Interest Income | $ | 335,359 |
| Other Income (1) | $ | 70,696,705 |
| Total Admin. Income | $ | 74,990,502 |
| | | |
| Admin Exp A/P | $ | 871,220 |
| | | |
| **Total Sources of Cash** | $ | 75,861,722 |
| | | |
| Total Cash | $ | 194,640,698 |

## Uses of Cash

As % of Total Cash

| | | | |
|---|---|---:|---:|
| Admin. Expenses | | | |
| Bank Service Charges | $ | 2,519 | |
| Insurance | $ | 1,028,135 | |
| Patent Acquisition | $ | 10,000 | |
| FAMA Management | $ | 13,480,542 | |
| Mark Holtzman | $ | 1,453,500 | |
| Julie Parikh | $ | 1,422,503 | |
| Lucy Lu | $ | 1,331,000 | |
| Hank Spacone, Trustee | $ | 329,062 | |
| The Henry Group | $ | 275,000 | |
| McNutt & Litteneker | $ | 27,179,455 | |
| PCRS | $ | 861,169 | |
| Other Legal Bonuses | $ | 182,500 | |
| Bialson, Bergen & Schwab | $ | 1,264,841 | |
| Gray Cary/DLA Piper | $ | 412,177 | |
| Grant Thornton | $ | 347,724 | |
| Greenberg Clusker | $ | 279,244 | |
| McKenna Long & Aldridge | $ | 25,062 | |
| Nixon Peabody | $ | 8,996,340 | |
| Robert Berger/Omni | $ | 233,365 | |
| St James Law, PC | $ | 163,029 | |
| Winston & Strawn | $ | 188,744 | |
| Other Professional Fees | $ | 899,046 | |
| Travel & Entertainment | $ | 56,269 | |
| Sub Total Admin. Expenses | $ | 60,421,222 | 31.04% |
| | | | |
| Trade Claims Payments | | | |
| Bondholders | $ | 18,371,483 | |
| Settlements | $ | 6,543,139 | |
| Convenience Class Payout | $ | 419,897 | |

Case: 01-32495  Doc# 5345  Filed: 08/08/19 of 34  Entered: 08/20/19 13:22:51  Page 21

| | | | |
|---|---|---|---|
| Distribution - CCR 1st | $ | 56,740,046 | |
| Distribution - CCR 2nd | $ | 37,485,900 | |
| Distribution - CCR 3rd | $ | 13,453,538 | |
| Sub Total | $ | 133,014,003 | 68.34% |
| | | | |
| **Totals** | $ | 193,435,225 | |
| | | | |
| Net Use of Cash | $ | (117,573,503) | |
| | | | |
| **Beginning Cash** | $ | 118,778,976 | |
| **Net Activity thru 03/31** | $ | (117,573,503) | |
| **Total Cash on Hand** | $ | 1,205,473 | (3) |
| | | | |
| Accrued Liabilities (not in Q-Books) (4) | $ | (38,361) | |
| Bondholder Reserve | $ | - | |
| Insurance Deductible Reserve | $ | (250,000) | |
| | | | |
| **Net Cash (Accrual Basis)** | $ | 917,112 | |

Note  (1) See Other Income for detail

(2) See Professional Fees for detail

(3) Agrees to General Ledger - as of March 31, 2009

(4) See Accr_Unpaid Fees for detail



1  SUZZANNE UHLAND (S.B. 136852)
   BRETT WILLIAMSON (S.B. 145235)
2  KAREN RINEHART (S.B. 185996)
   JENNIFER TAYLOR (S.B. 241191)
3  O'MELVENY & MYERS LLP
   400 South Hope Street
4  Los Angeles, CA 90071-2899
   Telephone: (213) 430-6000
5  Facsimile: (213) 430-6407

Signed and Filed: December 18, 2009

THOMAS E. CARLSON
U.S. Bankruptcy Judge

6  Attorneys for the At Home Liquidating Trust, successor in
   interest to At Home Corporation, et al., Debtors and Debtors
7  in Possession

8

9

10              UNITED STATES BANKRUPTCY COURT FOR

11              THE NORTHERN DISTRICT OF CALIFORNIA

12                     San Francisco Division

13  In re                          Case No. 01-32495-TC

14  AT HOME CORPORATION,           Chapter 11
    a Delaware corporation, et al.,
15                                 (Jointly Administered)
                  Debtors.
16                                 **Hearing Date:**

17                                 Date:  December 18, 2009
                                   Time:  11:00 a.m. PST
18                                 Place: 235 Pine Street, 23rd Floor
                                          San Francisco, California
19                                 Judge: Hon. Thomas E. Carlson

20
    **ORDER GRANTING THE AT HOME LIQUIDATING TRUST'S MOTION FOR ORDER**
21  **APPROVING (A) SETTLEMENT AMONG THE AT HOME LIQUIDATING TRUST,**
    **THE BONDHOLDERS' LIQUIDATING TRUST AND THE AT HOME GENERAL**
22  **UNSECURED CREDITORS' LIQUIDATING TRUST, (B) AGREEMENT AMENDMENT**
    **AMONG THE AT HOME LIQUIDATING TRUST, THE BONDHOLDERS'**
23  **LIQUIDATING TRUST, THE AT HOME GENERAL UNSECURED CREDITORS'**
    **LIQUIDATING TRUST AND SHAW CABLESYSTEMS G.P., AND (C) TRANSFER OF**
24  **INTELLECTUAL PROPERTY ASSETS OF THE AT HOME LIQUIDATING TRUST**
    **AND THE AT HOME GENERAL UNSECURED CREDITORS' LIQUIDATING TRUST**
25  **TO THE BONDHOLDERS' LIQUIDATING TRUST**
    **FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES.**
26
    (Shaw Cablesystems G.P., McNutt Law Group LLP, Nixon Peabody LLP)
27

28
                                   ORDER GRANTING MOTION FOR ORDER
                                          APPROVING SETTLEMENT
SF1:781727.7

Upon the Motion for Order Approving (A) Settlement Among the At Home Liquidating Trust, the Bondholders' Liquidating Trust (the "BHLT") and the At Home General Unsecured Creditors' Liquidating Trust (the "GUCLT"), (B) Agreement Amendment Among the AHLT, BHLT, GUCLT and Shaw Cablesystems G.P. ("Shaw") and (C) Transfer of Intellectual Property Assets of the AHLT and the GUCLT to the BHLT Free and Clear of Liens, Claims, Interests and Encumbrances (the "Motion")[1] filed by the At Home Liquidating Trust ("AHLT" and, together with the BHLT and the GUCLT, the "Trusts"), successor in interest to At Home Corporation ("At Home") and certain of its affiliated entities (together with At Home, the "Debtors"), as debtors and debtors in possession in the above-captioned chapter 11 cases, with this Court on November 20, 2009 seeking entry of an order approving the Settlement Agreement entered into by and among the AHLT, the BHLT and the GUCLT, the Shaw Amendment entered into by and among the AHLT, the BHLT, the GUCLT and Shaw, and approving the transfer of the intellectual property of the AHLT and the GUCLT to the BHLT free and clear of all liens, claims, and encumbrances (other than the license rights expressly set forth in the Shaw Amendment).

NOW, THEREFORE, based upon all of the evidence proffered or adduced; the memoranda and objections, if any, filed in connection with the Motion; the arguments and evidence offered at the hearing on the Motion conducted on December 18, 2009; and the Court having determined that the relief requested in the Motion is in the best interests of the AHLT, the estates, the creditors and other parties in interest; and upon the entire record of these cases; and after due deliberation thereon; and good cause appearing therefor;

IT IS HEREBY FOUND, CONCLUDED AND DECLARED THAT:[2]

A.      The Court has jurisdiction over this matter and over the property of the AHLT and the bankruptcy estates pursuant to 28 U.S.C. §§ 157 and 1334;

---

[1] Capitalized terms used but not defined herein shall have the meaning given to such terms in the Motion.
[2] Pursuant to Federal Rule of Bankruptcy Procedure 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact as appropriate.

SF1:781727.7

1

ORDER GRANTING MOTION FOR ORDER
APPROVING SETTLEMENT

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363 and 1146, Bankruptcy Rules 6004 and 9019(a) of the Federal Rules of Bankruptcy Procedure, and Bankruptcy Local Rules 6004-1 and 9014-1

C. Good and sufficient notice of the Motion has been given, in accordance with Bankruptcy Local Rule 9014-1 of the United States Bankruptcy Court for the Northern District of California, and notice is in compliance with the Federal Rules of Bankruptcy Procedure and the local rules of procedure of this Court. Such parties in interest, including: (i) the Office of the United States Trustee for the Northern District of California, (ii) all parties known to the AHLT to have or assert liens in the assets to be transferred pursuant to the Settlement, (iii) counsel for any statutory committees appointed in these cases, have been afforded a reasonable opportunity to object to or to be heard regarding the relief requested in the Motion, and no other or further notice is necessary to grant the relief herein.

D. The releases provided for in this Order and the Settlement do not affect claims held by beneficiaries of a Trust against professionals, trustees, fiduciaries employed by or Supervisory Board members of *that* Trust.

E. The proposed transfer of the Intellectual Property contemplated in the Settlement and the mutual releases in the Settlement and the Shaw Amendment reflect the exercise at this time of the Trusts' sound business judgment and a proper exercise of the Trusts' fiduciary duties.

F. Approval at this time of the relief requested in the Motion, including without limitation the transfer of the Intellectual Property to the BHLT and execution of the Settlement and the Shaw Amendment, is in the best interests of the Trusts, their creditors, their estates, and other parties in interest.

G. The proposed transfer of the Intellectual Property was negotiated, proposed, and entered into by the parties at this time without collusion, in good faith, and from arm's-length bargaining positions. The BHLT is a buyer in good faith under section 363(m) of

Case: 01-32495    Doc# 5345    Filed: 08/08/19    Entered: 08/20/19 13:22:51    Page 25
of 34

1  the Bankruptcy Code and, as such, is entitled to the protections afforded thereby. Neither the

2  AHLT nor any other party to the Settlement or documents related thereto has engaged in any

3  conduct that would cause or permit the Settlement and the transactions contemplated thereby to

4  be avoided under section 363(n) of the Bankruptcy Code.

5    H.    The transfer of the Intellectual Property to the BHLT pursuant to the

6  Settlement (a) is or will be legal, valid, and effective transfers of property of the AHLT and the

7  GUCLT to the BHLT, and (b) except as expressly provided in the Settlement, vests or will vest

8  the BHLT with the AHLT's and the GUCLT's right, title, and interest in the Intellectual Property

9  free and clear of Liens and Claims (as hereinafter defined) (other than the license rights expressly

10  set forth in the Shaw Amendment).

11    I.    The AHLT and the GUCLT may transfer the Intellectual Property to the

12  BHLT pursuant to the Settlement free and clear of Liens and Claims as provided for in this Order

13  because, under the circumstances, one or more of the standards set forth in section 363(f)(1)–(5)

14  of the Bankruptcy Code has been satisfied, because (a) the holders of such Liens and Claims have

15  consented to such transfer; and/or (b) such holders could be compelled in a legal or equitable

16  proceeding to accept a money satisfaction of such Liens and Claims.

17    J.    The proposed transfer of the Intellectual Property to the BHLT is in

18  furtherance of a plan of liquidation. The transfers pursuant to the Settlement are not subject to

19  taxation under any federal, state, local, municipal, or other law imposing or purporting to impose

20  a stamp, transfer, recording, sale, or any other similar tax on any of the AHLT's transfers or sales

21  of real estate, personal property, or other assets owned by it in accordance with sections 1146(c)

22  and 105(a) of the Bankruptcy Code.

23    IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

24    1.    The Motion is GRANTED in all respects.

25    2.    All objections to the Motion or the relief requested therein that have not

26  been withdrawn, waived, mooted or settled, and all reservations of rights not incorporated in this

27  Order, are overruled on the merits.

28

SF1:781727.7                                  3                  ORDER GRANTING MOTION FOR ORDER
                                                                APPROVING SETTLEMENT

1                3.       The Settlement Agreement by and among the AHLT, the BHLT and the

2 GUCLT is approved in all respects.

3                4.       The Shaw Amendment by and among the AHLT, the BHLT, the GUCLT

4 and Shaw is approved in all respects.

5                5.       Pursuant to section 363(b) of the Bankruptcy Code, each of the Trusts is

6 hereby authorized and empowered on the closing of the Settlement to fully perform under,

7 consummate, and implement the Settlement, together with all additional instruments and

8 documents that may be reasonably necessary or desirable to implement the Settlement and the

9 transactions contemplated thereby, and to take all further actions as may be reasonably necessary

10 for the purpose of assigning, transferring, granting, conveying, and conferring to the BHLT, or

11 reducing to possession, any or all of the AHLT's and the GUCLT's rights that are contemplated

12 to be transferred pursuant to the Settlement, or as may be necessary or appropriate to the

13 performance of the Settlement.

14              6.       Pursuant to the terms of the Settlement, the obligations of the Trusts under

15 the Settlement are subject to the prior satisfaction of the following conditions unless waived by

16 written consent of each of the Trusts as to conditions (a), (f) and (g) and by the BHLT with

17 respect to the remaining conditions:

18             (a)      This Order shall have been entered and be unstayed.

19             (b)      At least five business days before the Closing Date, the GUCLT shall have

20 provided to the AHLT and the BHLT a schedule of the GUCLT Transferred Assets, such

21 schedule to contain all assets with an identifiable value (other than intangible litigation rights) for

22 all assets other than the GUCLT Retained Assets (as hereinafter defined) (the "GUCLT

23 Transferred Assets Schedule"). This schedule shall not include any of the claims reserved under

24 Paragraph (D), above, which are specifically excluded from any assets to be transferred or

25 released by the GUCLT.

26             (c)      At least five business days before the Closing Date, the GUCLT shall have

27 provided to the AHLT and BHLT a schedule of the GUCLT Retained Assets, such schedule to

28 contain all assets with an identifiable value that the GUCLT is retaining (the "GUCLT Retained

SF1:781727.7                              4                   ORDER GRANTING MOTION FOR ORDER
APPROVING SETTLEMENT

Case: 01-32495   Doc# 5189   Filed: 12/18/09   Entered: 12/21/09 14:08:47   Page 5 of
Case: 01-32495   Doc# 5345   Filed: 08/08/19   Entered: 08/20/19 13:22:51   Page 27
of 34

Assets Schedule"), provided that the GUCLT Transferred Assets will be all GUCLT assets other than GUCLT Retained Assets (as hereinafter defined) regardless of whether those assets appear on the GUCLT Retained Assets Schedule. Whether or not included in the schedule of GUCLT Retained Assets, the claims reserved in Paragraph (D), above, are excluded from any assets to be transferred or released by the GUCLT.

(d)     The GUCLT shall have provided to the AHLT and the BHLT a schedule containing true and correct information to the best of the GUCLT's knowledge of all parties that may assert a lien, encumbrance or interest in or on the GUCLT Transferred Assets.

(e)     The Trusts and Shaw shall have entered into the Shaw Amendment, which shall become effective concurrently with the effectiveness of this Settlement Agreement.

(f)     The AHLT shall have prepared and delivered to the other Parties for execution at least five business days before the Closing Date, and the Parties shall have executed and delivered to the BHLT, such assignments, instruments, waivers, quitclaims and other documents as may be necessary to effect the transfer of the Intellectual Property, as set forth in paragraphs 2(a), 4, 9 and 10 of the Settlement, to the BHLT.

(g)     The Closing Date shall have occurred no later than January 31, 2010.

7.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, all of the AHLT's and the GUCLT's right, title and interest in the assets to be transferred to the BHLT shall vest the BHLT with all the right, title and interest of the Debtors and their successors in interest (whether the AHLT, the BHLT, or the GUCLT) to such transferred assets free and clear of any and all liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), security interests, encumbrances and claims (as defined in section 101(5) of the Bankruptcy Code), reclamation claims, mortgages, pledges, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, rights of first refusal, contracts, offsets, recoupment, rights of recovery, judgments, orders, claims for reimbursements, contribution, indemnity or exoneration, in each case whether secured or unsecured, choate, or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or

SF1:781727.7                                    5                ORDER GRANTING MOTION FOR ORDER
                                                                APPROVING SETTLEMENT
Case: 01-32495    Doc# 5189    Filed: 12/18/09    Entered: 12/21/09 14:08:47    Page 6 of
12

Case: 01-32495      Doc# 5345      Filed: 08/08/19      Entered: 08/20/19 13:22:51      Page 28
of 34

1  disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured,

2  material or non-material, disputed or undisputed, or known or unknown, whether arising prior to,

3  on, or subsequent to the date the Debtors filed for relief in this Court, whether imposed by

4  agreement, understanding, law, equity or otherwise (collectively, the "Liens and Claims") that

5  may be asserted against Nixon Peabody LLP, The McNutt Law Group LLP, Shaw Cablesystems

6  G.P. (other than the license rights expressly set forth in the Shaw Amendment), any beneficiaries

7  of the GUCLT or their attorneys, agents or assigns, and any other party served with the Motion,

8  with all such Liens and Claims to attach only to the proceeds of the transfer with the same

9  priority, validity, force and effect as they now have in or against the Intellectual Property.

10         8.      If any person or entity that has filed financing statements or other

11  documents or agreements evidencing Liens and Claims shall not have delivered to the Trusts

12  prior to the closing, in proper form for filing and executed by the appropriate parties, termination

13  statements, instruments of satisfaction, and releases of Liens and Claims that the person or entity

14  has with respect to the rights to be transferred pursuant to the Settlement or otherwise, then (a) the

15  Trusts are hereby authorized to execute and file such statements, instruments, releases and other

16  documents on behalf of the person or entity with respect to the rights to be transferred pursuant to

17  the Settlement, and (b) the BHLT is hereby authorized to file, register, or otherwise record a

18  certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute

19  conclusive evidence of the release of Liens and Claims.

20         9.      The transfer of the rights to be transferred pursuant to the Settlement by the

21  AHLT and the GUCLT to the BHLT (a) are legal, valid and effective transfers of such rights and

22  (b) vest in the BHLT all right, title and interest of the AHLT and the GUCLT in and to such rights

23  (subject the license rights expressly set forth in the Shaw Amendment).

24         10.     With respect to any Liens, Claims and Interests asserted by Shaw relating

25  to the GUCLT Transferred Assets pursuant to the 2003 Shaw Agreement, the sole form of

26  adequate protection granted to Shaw shall be pursuant to the Shaw Amendment. Shaw shall have

27  no other rights or claims against the BHLT, the AHLT or the GUCLT.

28

SF1:781727.7                          6                ORDER GRANTING MOTION FOR ORDER
                                                       APPROVING SETTLEMENT

Case: 01-32495    Doc# 5189    Filed: 12/18/09    Entered: 12/21/09 14:08:47    Page 7 of
Case: 01-32495    Doc# 5345    Filed: 08/02/19    Entered: 08/20/19 13:22:51    Page 29
                                    of 34

11.     Nothing contained in the Plan confirmed in these cases or the Confirmation Order or any other order entered in these cases shall conflict with or derogate from the provisions of the Settlement, the transfer of the Intellectual Property, or the terms of this Order.

12.     Article 7.H.13 of the Plan is hereby deemed amended as set forth in Exhibit A to the Settlement Agreement.

13.     Article 7.I of the BHLT Trust Agreement is hereby deemed amended as set forth in Exhibit B to the Settlement Agreement.

14.     The Settlement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof as the Trusts and Shaw may agree, without further order of the Court, provided that any such modification, amendment, or supplement is not material. The transfer of the rights to be transferred pursuant to the Settlement is not subject to taxation under any federal, state, local, municipal, or other law imposing or purporting to impose a stamp, transfer, recording, sale, or any other similar tax on any of the AHLT's transfers or sales of real estate, personal property, or other assets owned by it in accordance with sections 1146(c) and 105(a) of the Bankruptcy Code.

15.     The transactions contemplated by the Settlement and the Shaw Amendment have been bargained for and undertaken by the Trusts and Shaw at arms'-length, without collusion, and in good faith within the meaning of section 363(m) of the Bankruptcy Code; the Trusts and Shaw have not engaged in any conduct that would cause or permit the Settlement to be avoided.

16.     This Order is and shall be binding upon and govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record

SF1:781727.7

7

ORDER GRANTING MOTION FOR ORDER
APPROVING SETTLEMENT

Case: 01-32495   Doc# 5189   Filed: 12/18/09   Entered: 12/21/09 14:08:47   Page 8 of
12

Case: 01-32495   Doc# 5345   Filed: 08/08/19   Entered: 08/20/19 13:22:51   Page 30
of 34

or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Trusts' rights to be transferred pursuant to the Settlement.

17. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Settlement.

18. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any obligation or right granted pursuant to the terms of this Order, and notwithstanding any reversal, modification, or vacatur of this Order, any actions taken by the Trusts or Shaw pursuant to the terms of this Order prior to the effective date of any such reversal, modification, or vacatur shall be governed in all respects by the original provisions of this Order and the Settlement, as the case may be.

19. This Court retains jurisdiction to (i) enforce and implement the terms and provisions of the Settlement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, (ii) resolve any disputes, controversies, or claims arising out of or relating to the Settlement, and (iii) interpret, implement, and enforce the provisions of this Order.

20. The terms and provisions of the Settlement, together with the terms and provisions of this Order, shall be binding in all respects upon the Trusts and their creditors, and any affected third parties and all persons asserting a Claim against or interest in the Trusts' estates or any of the rights to be transferred to the BHLT pursuant to the Settlement. The Settlement and the transactions contemplated thereby shall be specifically performable and enforceable against and binding upon, and not subject to rejection or avoidance by, the Trusts or any chapter 7 or chapter 11 trustee and their respective estates.

21. Because time is of the essence, the stay required under Bankruptcy Rules 6004(h) and 6006(d) is hereby waived. As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately upon entry.

SF1:781727.7

8

ORDER GRANTING MOTION FOR ORDER
APPROVING SETTLEMENT

Case: 01-32495    Doc# 5189    Filed: 12/18/09    Entered: 12/21/09 14:08:47    Page 9 of
Case: 01-32495    Doc# 5345    Filed: 08/02/19    Entered: 08/20/19 13:22:51    Page 31
of 34

*END OF ORDER*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SF1:781727.7

9

ORDER GRANTING MOTION FOR ORDER
APPROVING SETTLEMENT

COURT SERVICE LIST

**Office of the United States Trustee**
Patricia Cutler, Esq.
Office of the U.S. Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104
Phone: (415) 705-3333
Fax:     (415) 705-3379

**Co-Counsel to Bondholders' Liquidating Trust**
Weil, Gotshal & Manges LLP
Joseph Allerhand, Esq.
Richard Slack, Esq.
767 Fifth Avenue
New York, NY 10153-0119
Phone: (212) 310-8000
Fax:     (212) 310-8007

**Co-Counsel to Bondholders' Liquidating Trust**
Maxim B. Litvak, Esq.
Pachulski, Stang, Ziehl & Jones, P.C.
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Phone: (415) 263-7000
Fax:     (415) 263-7010

**Counsel for At Home General Unsecured Creditors' Liquidating Trust**
Scott H. McNutt, Esq.
Michael Sweet, Esq.
McNutt Law Group
188 The Embarcadero, Suite 800
San Francisco, CA 94105
Phone: (415) 995-8475
Fax:     (415) 995-8487

**Counsel for Official Committee of Equity Security Holders**
Stephen C. Becker, Esq.
Becker Law Office
Robert Dollar Building
311 California Street, Suite 330
San Francisco, CA 94104-2625
Phone: (415) 434-8000
Fax:     (415) 362-7411

**Counsel for the At Home Liquidating Trust, successor in interest to At Home Corporation, et al., Debtors and Debtors in Possession**
Suzzanne Uhland, Esq.
Jennifer Taylor, Esq.
O'Melveny & Myers LLP
2 Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel:     (415) 984-8700
Fax:     (415) 984-8701

**Counsel for the At Home Liquidating Trust, successor in interest to At Home Corporation, et al., Debtors and Debtors in Possession.**
Karen Rinehart, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071
Tel:     (213) 430-6000
Fax:     (213) 430-6407

**Counsel for the At Home Liquidating Trust, successor in interest to At Home Corporation, et al., Debtors and Debtors in Possession**
Brett Williamson, Esq.
O'Melveny & Myers LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel:     (949) 760-9600
Fax:     (949) 823-6994

SF1:781727.7

10

| | |
|---|---|
| 1 | **Counsel to Shaw Cablesystems G.P.** |
| | David Kennedy, Esq. |
| 2 | Gibson, Dunn & Crutcher LLP |
| | 1881 Page Mill Road |
| 3 | Palo Alto, CA 94304 |
| | Tel: (650) 849-5304 |
| 4 | Fax: (650) 849-5004 |

**Counsel to Shaw Cablesystems G.P.**
David Kennedy, Esq.
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 849-5304
Fax: (650) 849-5004

**Counsel to Shaw Cablesystems G.P.**
Oscar Garza, Esq.
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA 92612
Tel: (949) 451-3800
Fax: (949) 451-4220

**Nixon Peabody LLP**
Attention: Managing Partner
One Embarcadero Center, Suite 1800
San Francisco, CA 94111
Tel: (415) 984-8200
Fax: (415) 984-8300

**McNutt Law Group LLP**
Attention: Managing Partner
188 The Embarcadero, Suite 800
San Francisco, CA 94105
Phone: (415) 995-8475
Fax: (415) 995-8487

**Winston & Strawn LLP**
Attention: Managing Partner
101 California Street
San Francisco, CA 94111-5802
Tel: (415) 591-1000
Fax: (415) 591-1400

**Winston & Strawn LLP**
Attention: Glenn Westreich, Esq.
101 California Street
San Francisco, CA 94111-5802
Tel: (415) 591-6825
Fax: (415) 591-1400

11

SF1:781727.7
Case: 01-32495   Doc# 5345   Filed: 08/08/19   Entered: 08/20/19 13:22:59   Page 12 of 34
Case: 01-32495   Doc# 5189   Filed: 12/18/09   Entered: 12/21/09 14:08:47   Page 12 of 12